**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>JOHN C. MCBRIDE,<br><br>　　　　　　　　Debtor<br><br>AUBREY B. STALLWORTH, Jr.,<br><br>　　　　　　　　Plaintiff<br><br>v.<br><br>JOHN C. MCBRIDE,<br><br>　　　　　　　　Defendant | Chapter 7<br>Case No. 09-14485-FJB<br><br><br><br>Adversary Proceeding<br>No. 10-1215 |

**MEMORANDUM OF DECISION**

**I.　　Overview**

By his complaint in the adversary proceeding, plaintiff Aubrey Stallworth, Jr. ("Stallworth") seeks a determination that a debt owed to him by the defendant and chapter 7 debtor, John McBride ("McBride"), is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).  After a trial, the Court now makes the following findings and rulings and, on the basis thereof, concludes that the judgment debt is excepted from discharge to the extent of $5,186.80.

**II.　　Findings of Fact and Procedural History**

The matter arises from McBride's representation of Stallworth in a series of proceedings following Stallworth's arrest in June, 1993.  In connection with his arrest, state law enforcement officials seized $175,000 in cash, various items of jewelry, several weapons, more than a pound of cocaine, scales, books, records, and other paraphernalia from Stallworth's residence, a unit in a multi-family

house owned by his parents, Aubrey Stallworth, Sr. and Bettye Stallworth.[1] Additionally, federal authorities seized from the home two BMW sedans, both of which belonged to Stallworth's parents.

The Commonwealth of Massachusetts ("Commonwealth") subsequently charged Stallworth with drug trafficking, possession of firearms, and possession of narcotics with intent to distribute within 1000 feet of a school zone. The Commonwealth also filed a complaint for forfeiture against the property seized from Stallworth's home (the "State Forfeiture Action"), while the federal Drug Enforcement Agency ("DEA") commenced forfeiture proceedings against the two BMW sedans ("Federal Forfeiture Action"). McBride agreed to represent Stallworth in the criminal action for a fee of $15,000, which Stallworth's parents paid on his behalf. McBride separately agreed with Stallworth's parents to represent them in the Federal Forfeiture Action.

After a jury trial, Stallworth was convicted of drug trafficking and possession of firearms and sentenced to a number of years in prison. McBride informed Stallworth that he would charge an additional $15,000 for handling his criminal appeal, but no formal fee agreement was signed at this time. Stallworth's parents paid McBride an initial $1,500 to secure his representation of Stallworth in the appeal.

Notwithstanding the absence of a retention agreement regarding the State Forfeiture Action, McBride began negotiating with the Commonwealth, through assistant district attorney John Julian ("ADA Julian"), to settle the State Forfeiture Action. On December 16, 1994, McBride sent a letter to Stallworth at Massachusetts Correctional Institute Concord ("MCI Concord") explaining that ADA Julian had agreed to return $50,000 in cash and all the jewelry seized. Stallworth, however, was delayed in receiving the letter because prior to its delivery, he had been transferred from MCI Concord to MCI Norfolk. Stallworth eventually received the letter at MCI Norfolk sometime between December 20 and December 23, 1994.

---

[1] At trial on the instant proceeding, Stallworth testified, not credibly, that he had no knowledge as to where the money, drugs, and weapons had come from.

Nonetheless, on December 19, 1994, McBride represented to ADA Julian that he had authority to accept the proposed settlement agreement. McBride testified at trial in the instant proceeding that he had spoken with Stallworth and Stallworth's parents prior to his accepting the settlement, that it was in Stallworth's best interest to accept the settlement, and that Stallworth wanted to accept the settlement. At a subsequent disciplinary hearing regarding McBride's handling of the Stallworth forfeiture actions, the Massachusetts Bar of Board Overseers ("BBO") hearing committee found that McBride had entered into the agreement without Stallworth's consent. On the basis of the evidence before me, I do not credit McBride's testimony, and I find that he entered into the agreement without Stallworth's authorization.

The next day, December 20, 1994, McBride sent a letter to Stallworth's parents stating that he had entered into an agreement to settle the State Forfeiture Action and that his fee would be one-third of the amount of any money and property recovered. The letter also stated that his fee to represent Stallworth in the criminal appeal was $15,000. On December 21, 1994, the Commonwealth issued and gave to McBride a check for $50,000, made payable to Aubrey Stallworth, Jr., as settlement of the State Forfeiture Action.

On December 22, 1994, McBride directed his bookkeeper of twenty years, Diane Berman, to endorse the check with Stallworth's signature. The funds were deposited into McBride's Interest on Lawyers' Trust Account (IOLTA). That same day, and again at McBride's instruction, Ms. Berman issued a check, made payable to McBride & Associates, for $30,166.67 drawn from the IOLTA account. With McBride's authorization, Ms. Berman endorsed the check with McBride's signature and deposited the funds into McBride's operating account.

The following day, McBride met with Stallworth's parents and presented them with a proposed fee settlement agreement (the "Fee Settlement Agreement") between himself and Stallworth. The Fee Settlement Agreement outlined the settlement terms of the State Forfeiture Action and specified the

3

disbursement of the settlement funds: $16,666.67 to McBride as his one-third contingency fee for the State Forfeiture Action; $13,500 to McBride for the balance of the fee for the criminal appeal; and $19,833.33 to Stallworth. The Fee Settlement Agreement also contained a clause indicating that Aubrey Stallworth, Sr. was authorized to approve the settlement and attorney's fees for Stallworth pursuant to a power of attorney; McBride knew this to be false. Stallworth had never executed a power of attorney, and he further knew that Stallworth had not authorized the settlement with the Commonwealth, had not entered into a fee agreement with McBride as to the State Forfeiture Action, and had not authorized the Fee Settlement Agreement. McBride and Aubrey Stallworth, Sr. signed the agreement, the latter ostensibly under power of attorney for Stallworth. Stallworth ultimately learned of the Fee Settlement Agreement only later, on December 27.

On January 5, 1995, McBride visited Stallworth at MCI Norfolk to discuss the criminal appeal. During the visit, McBride agreed to lower his fee for the criminal appeal to $5,000. McBride, however, did not immediately return to the IOLTA account the $10,000 he had previously paid himself for these services. Around the end of January, Stallworth dismissed McBride from representing him on the criminal appeal. Eventually, McBride returned all but $1,000 of the $15,000 charged for the criminal appeal.

In connection with his representation of Aubrey Stallworth, Sr. and Bettye Stallworth in the Federal Forfeiture Action, the DEA official assigned to the case contacted McBride regarding the remission petition that he had filed on behalf of Stallworth's parents in April 1996. The official informed McBride that he would need the senior Stallworths' tax returns for tax years 1990 to 1995 in order to determine whether the BMW sedans had been purchased by legitimate means. McBride agreed to speak to his clients and obtain the documents, but he never asked Stallworth's parents for the returns.[2] In August 1996, the DEA official reached McBride by telephone and inquired about the returns. McBride

---

[2] In a letter to Stallworth, McBride informed Stallworth of the DEA's request for information from his parents.

4

informed him that he no longer represented the senior Stallworths.  Not knowing of the need for the returns, the Stallworths never adduced them.  Having no evidence of acquisition by legitimate means, the DEA official recommended denial of the Stallworths' petition for remission.  As a result, their petition for remission of the vehicles was denied without an opportunity to know whether the returns might have affected the outcome.  Both of Stallworth's parents had worked and received a salary during the years for which tax returns were requested.  The DEA official stated that the returns might have affected his decision to recommend denial of the parents' petition.  By failing to notify the senior Stallworths of the DEA's repeated requests for their income tax returns, McBride harmed them by denying them the opportunity to prove that they had sufficient income to purchase the vehicles.  The SJC characterized McBride's failure to ask the Stallworths for the returns as "neglect."

On May 20, 1996, Stallworth sent McBride a demand letter pursuant to Mass. Gen. Laws ch. 93A, alleging that McBride had engaged in unfair and deceptive acts.  McBride answered the demand letter with a general denial of the allegations.  Stallworth then filed a complaint against McBride in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, asserting claims for fraud, intentional misrepresentation, legal malpractice, conversion, and violation of Mass. Gen. Laws ch. 93A.  The complaint has not been introduced into evidence.

McBride failed to answer the complaint, whereupon he was defaulted as to liability.  After an evidentiary hearing for assessment of damages, the Superior Court issued a Memorandum of Decision[3] and, on February 13, 2006, entered a default judgment against McBride.  The Court awarded actual damages in the amount of $38,866.67 "for the two vehicles and the excessive attorney's fees charged by McBride," trebled this award pursuant to Mass. Gen. Laws ch. 93A, and further awarded interest from the date of the complaint and costs.

---

[3] The Memorandum of Decision is attached to the complaint.  In his answer, McBride admits its entry and authenticity.  See Complaint and Answer, at ¶ 33 of each.

5

The damages awarded "for the two vehicles" were awarded for McBride's mishandling of the Federal Forfeiture Action for Stallworth's parents. Though the Superior Court did not specify how much of the $38,866.67 award for actual damages was attributable to each of its component parts, the vehicles and the excessive fees, it is clear from the Memorandum of Decision that only $1,000 of fees remained in issue; the Superior Court found that all other fees paid or taken for the appeal and the forfeiture actions had been returned. I conclude that the actual damages award includes only $1,000 for unreturned fees and that the balance is attributable to damages relating to the vehicles. The $1,000 for unreturned fees is, in essence, damages for McBride's misconduct in handling the State Forfeiture Action for Stallworth.

On April 30, 2008, Stallworth received an execution of judgment in the amount of $201,594. This included judgment and costs of $165,446, interest through the date of the execution of $32,037.76, and expenses of $4,109.69. Because $1,000 is 2.57289 percent of the total actual damages awarded, and the balance of the judgment is simply a trebling of actual damages and assessment of interest and costs on the whole, I conclude that the portion of the judgment attributable to McBride's misconduct in handling the State Forfeiture Action for Stallworth is 2.57289 percent of the total judgment as quantified in the execution, or $5,186.80.

In 1999, Massachusetts Bar Counsel filed a three-count petition for discipline against McBride. The petition was based in part on McBride's representation of Stallworth and his parents, including precisely the actions that constitute the basis of the present complaint. The BBO hearing committee found multiple violations of the rules of professional conduct. Accordingly, a single justice of the Supreme Judicial Court ("SJC") ordered that McBride be disbarred. McBride appealed to the full SJC. In an opinion issued in 2007, the full SJC affirmed McBride's disbarment and, against McBride's urgings, found no error in the findings and conclusions on which it was predicated, including those concerning

his representation of the Stallworths.[4]  The SJC's opinion sets forth the findings concerning the Stallworth representation on which the order of disbarment was in part predicated.

McBride filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 18, 2009, and the case thus commenced was converted to one under Chapter 7 on October 6, 2009.  Stallworth timely filed the instant adversary proceeding, seeking a determination McBride's judgment debt to him is excepted from discharge under § 523(a)(2)(A) as a debt arising from false pretenses or false representation, under § 523(a)(4) as debt arising from fraud while acting in a fiduciary capacity, and under§ 523(a)(6) for willful and malicious injury to his property and to the property of his parents.  Stallworth does not rely on the state-court judgment for issue preclusion in the instant adversary proceeding.  A one-day trial was held at which Stallworth and McBride testified and five exhibits were introduced into evidence.   At the conclusion of trial, I took the matter under advisement.

### III.    Jurisdiction

The matter before the court is a complaint under 11 U.S.C. § 523(a) to determine the dischargeability of a debt.  The matter arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).  It is a core proceeding.  28 U.S.C. § 157(b)(2)(I) (core proceedings include determinations as to the dischargeability of particular debts).  This court accordingly has authority to enter final judgment in the matter.  28 U.S.C. § 157(b)(1).

---

[4] The SJC's opinion is attached to the complaint.  In his answer, McBride admits its entry and authenticity.  See Complaint and Answer, at ¶ 35 of each.

IV.     Discussion

   A. Preliminary Matters

The party seeking to except a debt from discharge bears the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). "In furtherance of the Bankruptcy Code's 'fresh start' policy, exceptions to discharge are narrowly construed." *Danvers Savings Bank v. Alexander (In re Alexander),* 427 B.R. 183, 193 (Bankr. D. Mass. 2010), citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997).

   B. False Representation

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or financing of credit to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). As the gravamen of this count, Stallworth alleges that McBride "obtained funds of the Plaintiff and caused loss to the Plaintiff's property by fraudulently representing that he had the authority to enter into a settlement agreement regarding the state forfeiture action." Stallworth contends that the state court judgment debt is in part one for money obtained by a false representation.

In order to establish that a debt is nondischargeable under § 523(a)(2)(A) due to a false representation, the plaintiff must prove each of the following elements by a preponderance of the evidence: "1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; 2) the debtor intended to deceive; 3) the debtor intended to induce the creditor to rely upon the false statement; 4) the creditor actually relied upon the misrepresentation; 5) the creditor's reliance was justifiable; and 6) the reliance upon the false statement caused damage." *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997)). The first two elements of the test describe the conduct and scienter required to show fraudulent

8

conduct generally, while the last four elements embody the requirement that the creditor's claim arise directly from the debtor's fraud. *Spigel*, 260 F.3d at 32.

The facts of this case do not follow the pattern most commonly seen in actions under § 523(a)(2)(A), in which the creditor relies on a fraud or misrepresentation committed against the creditor. Here, Stallworth would except a portion of his judgment debt from discharge on the basis of a deception practiced against a third party (the Commonwealth of Massachusetts through its assistant district attorney), not on him, where the deception nonetheless directly gave rise to claims by the creditor against the debtor (in the nature of malpractice and, in essence, conversion of the debtor's cause of action). Although the courts usually articulate the test for establishment of a false representation under § 523(a)(2)(A) as requiring a false statement "to the creditor," intent to deceive "the creditor," and reliance by "the creditor" to "the creditor's" detriment, nothing in the language of the statute requires so narrow a construction. What the statute requires is a "debt . . . for money . . . obtained by . . . a false representation." 11 U.S.C. § 523(a)(2)(A). McBride did obtain and liquidate property belonging to Stallworth (his cause of action for remission of the seized monies) by a knowingly false representation (that he had authority from his client to settle the cause of action). He did so by making a false representation to an assistant district attorney acting on behalf of the Commonwealth of Massachusetts. He knew this representation to be false when he made it, and he made it with intent to deceive. The Commonwealth relied on the false representation, justifiably, to its own detriment by transferring $50,000 to McBride in reliance on his false representation. By this same misrepresentation, McBride exercised control over Stallworth's rights in the State Forfeiture Action and the $50,000 given in liquidation thereof and harmed Stallworth. On the basis of this tortious conduct and harm by McBride, the state court judgment obtained by Stallworth against McBride includes actual damages of $1,000 for return of attorney's fees paid for McBride's representation of Stallworth in the State Forfeiture Action; to this award was added $2,000 for trebling under ch. 93A and costs and interest. I conclude that

9

Stallworth has established cause to except these amounts, totaling $5,186.80 plus accruing interest, from discharge under § 523(a)(2)(A).

### C. Fraud and Defalcation While Acting in a Fiduciary Capacity

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary duty." 11 U.S.C. § 523(a)(4). To except a debt from discharge under § 523(a)(4), a creditor must show by a preponderance of the evidence that: (1) the debt results from a fiduciary's fraud or defalcation under an "express" or "technical trust"; (2) the debtor acted in a fiduciary capacity with respect to that trust; and (3) the debt was caused by a fraud or defalcation within the meaning of bankruptcy law. *Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 687 (1st Cir. BAP 2012).

Federal law determines whether a fiduciary relationship exists under § 523(a)(4). *Fahey*, 482 B.R. at 687; *see also Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189 (9th Cir. 2001). The fiduciary status necessary for purposes of § 523(a)(4) is more narrowly defined than under general common law; "the broad, general definition of 'fiduciary'—a relationship involving confidence, trust and good faith—is inapplicable." *Fahey*, 482 B.R. at 688 (internal citations omitted). Under federal law, the fiduciary relationship must arise from "an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Tudor Oak Ltd. Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997); *see also Breed's Hill Agency, Inc. v. Fravel (In re Fravel)*, 485 B.R. 1, 14 (Bankr. D. Mass. 2013). An express trust requires "an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust relationship . . . [i]n contrast, a technical trust arises under statute or common law." *Id*. at 14 (internal citations omitted).

In Massachusetts, an attorney stands in a fiduciary relationship to his client. *See e.g., Goldman v. Kane*, 3 Mass. App. Ct. 336, 340-341, 329 N.E. 2d 777 (1975) (the attorney-client relationship is highly fiduciary in nature); *Sears Roebuck & Co v. Goldstore & Sudalter*, 128 F.3d 10, 15 (1st Cir. 1997) (the attorney-client relationship is highly fiduciary in Massachusetts)(internal citations omitted). This general

10

definition does not fit within the narrow construction of fiduciary under § 523(a)(4).  Thus, not every breach of fiduciary duty by an attorney will give rise to a nondischargeable debt.

Nevertheless, an attorney may be considered to be acting in a fiduciary capacity for purposes of § 523(a)(4) if the attorney is entrusted with client funds or property.  As discussed by the bankruptcy court in *Anderson v. Ingeneri (In re Ingeneri)*, 321 B.R. 601, 604-605 (Bankr. D. Me. 2005):

> When client property is entrusted to an attorney, the attorney-client relationship, which would otherwise be a fiduciary relationship based upon special knowledge, skills, and expectations, becomes, in addition to that, a technical trust relationship. With the entrustment of property, an attorney automatically takes on the duties (i.e. 'fiduciary capacity') of a trustee. These trust duties are in addition to the ordinary fiduciary duties attendant upon a purely service based (e.g. litigation) attorney-client relationship. It is the entrustment of property which superimposes a technical trust upon the attorney-client relationship and it is the existence of a technical trust which places the lawyer in a fiduciary capacity.

Therefore, the exception to discharge under § 523(a)(4) 'for fraud or defalcation while acting in a fiduciary capacity' will not apply to an attorney unless there is an entrustment of client funds or property. *Ingeneri*, B.R. at 605; *see also Davis v. Rickabaugh (In re Rickabaugh)*, 355 B.R. 743, 754 (Bankr. D. Iowa 2006) (holding that if debtor attorney had been entrusted with property, any debt arising from fraud or defalcation with respect to such property would be nondischargeable under §523(a)(4)); *Stephens v. Bigelow (In re Bigelow)*, 271 B.R. 178, 188 (concluding since there were no trust funds involved in Bigelow's attorney-client relationship with Stephens, the relationship was not a "fiduciary" relationship within the narrow meaning of § 523(a)(4)).

Stallworth asserts that McBride committed fraud while acting in a fiduciary capacity when he settled the forfeiture action without his consent.  Stallworth has not alleged the existence of an express trust.  Furthermore, there was no technical trust relationship between the two parties.  At the time McBride made the misrepresentation to ADA Julian, he was not entrusted with any of Stallworth's property or funds.  While the misrepresentation led to the procurement of the settlement funds, a

11

technical trust must exist before and without reference to the wrongdoing that caused the debt. Accordingly, I find that McBride was not acting in a fiduciary capacity for purposes of § 523(a)(4), and Stallworth has failed to meet his burden of demonstrating fraud while acting in a fiduciary capacity.

Stallworth next argues that McBride committed a defalcation while acting in a fiduciary capacity when he endorsed the settlement and took his fee without authorization. The term defalcation is not defined in the Bankruptcy Code. In *In re Baylis*, the First Circuit explained that "a defalcation may be presumed from a breach of the duty of loyalty, the duty not to act in the fiduciary's own interest when that interest comes or may come into conflict with the beneficiaries' interest." *In re Baylis*, 313 F.3d 9, 201 (1st Cir. 2002). While a defalcation requires that there be a breach of fiduciary duty, not all breaches amount to defalcation; defalcation requires some degree of fault. *Baylis*, 313 F.3d at 17-19.

In *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754 (2013), the United States Supreme Court resolved a split among the circuits regarding the requisite mental culpability for defalcation under § 523(a)(4). The Supreme Court held that the term defalcation:

> includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.

*Bullock*, 133 S.Ct. at 1757. The Court further stated:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.

*Bullock*, 133 S.Ct. at 1759. To prove defalcation for purposes of § 523(a)(4), the debtor must have acted with the knowledge that his conduct would constitute a breach of fiduciary duty or with conscious

12

disregard to a substantial and unjustifiable risk that his conduct would constitute a breach of fiduciary duty.

I find that McBride committed a defalcation while acting in a fiduciary capacity by misappropriating the settlement funds. After McBride settled the State Forfeiture Action, a check made payable to Aubrey Stallworth, Jr., was issued and given to McBride. As McBride was entrusted with Stallworth's funds, a technical trust existed, placing McBride in a fiduciary capacity within the scope of § 523(a)(4). It was in his capacity as a fiduciary that McBride took all actions, whether directly or indirectly through Ms. Berman, with respect to the settlement funds. After receiving the settlement check, McBride paid himself his fee despite there being no valid fee agreement in place—a clear violation of his fiduciary duty as an attorney. Moreover, McBride knew that no fee agreement was in place when he directed his bookkeeper to issue the check. McBride subsequently sought to ratify his actions when he presented Aubrey Stallworth, Sr. with the Fee Settlement Agreement that contained a clause that Aubrey Stallworth, Sr. was authorized to approve the attorney's fees pursuant to his alleged power of attorney. Accordingly, I find that the debt arising from the misappropriation of fees is excepted from discharge pursuant to § 523(a)(4) to the extent of $5,186.80.

**D. Willful and Malicious Injury**

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The terms "willful" and "malicious" are distinct elements that a creditor must prove. *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 1999). In *Kawaauhau v. Geiger*, the United States Supreme Court explained that "the word 'willful' in § 523(a)(6) modifies the term 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The element of malice requires that "the creditor show that the willful injury was caused without justification or excuse." *Printy*

*v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997). "Malice thus has both objective and subjective elements: the injury must have been objectively wrongful or lacking in just cause or excuse; and the debtor must have inflicted the injury in 'conscious disregard' of her duties, meaning that she has to have been aware that the act was wrongful or lacking in just cause or excuse." *Burke v. Neronha (In re Neronha)*, 344 B.R. 229, 231-32 (Bankr. D. Mass. 2006).

### i. Federal Forfeiture Action

Stallworth asserts two counts under subsection (a)(6). In the first, he argues that by failing to respond appropriately to the DEA agent's request for copies of the senior Stallworths' tax returns, McBride willfully and maliciously injured them by precluding them from prevailing in the Federal Forfeiture Action and thereby recovering their vehicles. In order to prevail on these facts, Stallworth would have to prove (among other things) that McBride failed to request the Stallworths' tax returns and deliver the same to the federal authorities *with intent thereby to lose the forfeiture action and thereby injure the Stallworths*. This has not been proven. At most, the record establishes that McBride's failings with respect to the tax returns were negligent; Stallworth has not proven that McBride acted with intent to injure. Therefore, McBride's conduct as to the tax returns cannot be a basis for excepting from discharge under § 523(a)(6) that portion of the state court judgment that is attributable to mishandling of the automobile forfeiture proceeding.

### ii. State Forfeiture Action

In his second count under § 523(a)(6), Stallworth contends that by settling without authority the state forfeiture action for $50,000, McBride forfeited the remaining $125,000 in cash that was at stake and thereby willfully and maliciously injured his property, i.e., Stallworth's interest in the cash. The court agrees. McBride's compromise of the State Forfeiture Action without authority was an exercise of dominion over Stallworth's interest in his cause of action. McBride protests that Stallworth was lucky to

get $50,000 and could not have hoped to get more in any other scenario. This misses the point, which is that Stallworth should have been free to control the disposition of his cause of action as he saw fit, and that McBride essentially took this prerogative away from him, a transgression of his property right for which the Superior Court awarded damages of $5,186.80.[5] This injury was intentional: McBride inflicted it with knowledge that he was appropriating Stallworth's cause of action as if it were his own. The injury was also malicious: McBride knew he did not have authority to compromise the State Forfeiture Action and that his conduct was wrongful, both as a transgression of Stallworth's property interest in the cause of action and as a violation of his ethical obligations as an attorney to his client. Accordingly, I conclude that the same $5,186.80 as is excepted from discharge under subsections (a)(2)(A) and (a)(4) is also excepted from discharge under (a)(6).

### V.    Counterclaim

McBride filed a counterclaim for abuse of process but made no mention of it in the Joint Pretrial Memorandum or at trial. I deem it waived. It is in any event frivolous.

### VI.    Conclusion

For the reasons set forth above, the Court will enter a separate judgment declaring that state court judgment is excepted from discharge to the extent of $5,186.80 plus accruing interest thereon, that the balance of the judgment debt is not excepted from discharge, and that the counterclaim for abuse of process is dismissed.

Date: June 18, 2014

_____
Frank J. Bailey
United States Bankruptcy Judge

---

[5] In addition, it is hardly clear that Stallworth could not have recovered more than he did, especially where McBride himself has established that the Commonwealth was motivated to settle the matter. I agree with McBride that Stallworth could not have prevailed at a trial of that action on the merits, but I do not find that Stallworth could not have negotiated a richer compromise than McBride settled for.